## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

|  |  |  |
|---|---|---|
| | * | |
| **SALAHELDIN MOHAMED IBRAHIM,** | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | **Case No.: 21-cv-01355** |
| | * | |
| **SECRETARY ALEJANDRO MAYORKAS,** | | |
| **DEPARTMENT OF HOMELAND** | | |
| **SECURITY,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OPINION AND ORDER

On June 1, 2021, Plaintiff Salaheldin Mohamed Ibrahim, proceeding *pro se*, filed suit against his employer, the Department of Homeland Security, naming the Secretary of the Department, Alejandro Mayorkas ("Secretary"), as the Defendant. Mr. Ibrahim alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Compl., ECF No. 1. On October 29, 2021, the Secretary filed a motion to dismiss for failure to timely exhaust administrative remedies. Mot. Dismiss, ECF No. 12. Mr. Ibrahim filed a response in opposition, Resp., ECF No. 14, and the Secretary replied, Reply, ECF No. 15. I have reviewed the filings and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021).[1] For the following reasons, the Secretary's motion shall be GRANTED.

---

[1]     Mot., ECF No. 12; Resp., ECF No. 14; Reply, ECF No. 15.

**BACKGROUND**

I.      **Factual Background**

Mr. Ibrahim began working for U.S. Citizenship and Immigration Services (the "Agency")

within the Department of Homeland Security in 2001. Am. Compl. p. 2, ECF No. 11. At the start

of the events underlying the allegations giving rise to the Amended Complaint in early 2018, Mr.

Ibrahim was working as a Supervisory Immigration Services Officer at the Agency's Potomac

Service Center ("PSC") at the G14 pay level. *Id.* at 2. According to Mr. Ibrahim, he consistently

earned the highest possible annual performance rating and, aside from the incidents described in

the Amended Complaint, was never subject to any disciplinary actions. *Id.* at 1-2.

On May 15, 2018, Mr. Ibrahim's supervisor issued his mid-year Performance Plan and

Appraisal ("PPA") for the performance year ending September 30, 2018. *See* Am. Compl. Ex. C-

3, ECF No. 11-10; Mot. Ex. 3 at 17, ECF No. 12-5.[2] The PPA gave Mr. Ibrahim the second-highest

rating available, rather than the highest. *Id.* at 2. Mr. Ibrahim took issue with this rating right away,

believing it to be lower than what his performance warranted. Am. Compl. ¶ 7. Mr. Ibrahim claims

that he "immediately told [his supervisor that the rating] was discrimination and refused to sign

it," and then sent a follow up email in which he restated his belief that the rating was

discriminatory. Mot. Ex. 3 at 22.

---

[2]      I note that there are some discrepancies in dates between those stated in Mr. Ibrahim's
Amended Complaint and the underlying record. In his Amended Complaint, Mr. Ibrahim claims
that the PPA was issued on May 9, 2018. Am. Compl. ¶ 7. Mr. Ibrahim's Equal Employment
Opportunity complaint indicates though that Mr. Ibrahim received the rating on May 15, 2018.
Mot. Ex. 3 at 17. Where there is a conflict between the Amended Complaint and exhibits, the
exhibits will prevail, so I will use the dates in the underlying record. *See S. Walk at Broadlands
Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013)
("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached
[to the complaint,] ... the exhibit prevails.").

Around the same time, the Agency opened an investigation ("First Management Inquiry") into allegations of Mr. Ibrahim's confrontational and hostile behavior in the workplace, which culminated in an outburst toward several colleagues on April 25, 2018. Mot. Ex. 5 at 2, ECF No. 12-7. The outburst was related to PSC's "Employee of the Quarter" award, which Mr. Ibrahim believed he should have received. *Id.* When a colleague received the award instead, Mr. Ibrahim confronted several of his colleagues, raised his voice, and alleged that discrimination was the reason he did not receive the award. *Id.* The First Management Inquiry was conducted from May 9, 2018 to September 29, 2018. Mot. Ex. 4, ECF No. 12-6. During the pendency of the investigation, and until December 2018 when final action was taken, Mr. Ibrahim was involuntarily reassigned to a position at USCIS headquarters. Am. Compl. ¶ 11.

On November 8, 2018, the performance year ended and the mid-year rating became the final year-end rating. Mot. Ex. 6 at 4, ECF No. 12-8. That same day, Mr. Ibrahim received the year-end PPA via email and was asked to sign it. Am. Compl. Ex. C-2 at 1, ECF No. 11-9. Both reviewing officials signed the PPA, Christopher Dombeck on November 8, 2018, and Connie Nolan on November 13, 2018, but Mr. Ibrahim again refused to sign the PPA and requested supporting evidence for both the year-end and mid-year ratings. *Id.;* Mot. Ex. 6 at 4. The year-end PPA was thus marked by the Agency as 'refused to sign' on the employee signature line. Mot. Ex. 6 at 4. Mr. Ibrahim continued to protest the ratings and request supporting documentation for the remainder of 2018 and through September of 2019. *See* Am. Compl. Exs. C-1 – C-6, ECF Nos. 11-8 – 11-13.

As its final action in the First Management Inquiry, the Agency issued Mr. Ibrahim a non-disciplinary Letter of Counseling on December 10, 2018. Mot. Ex. 7, ECF No. 12-9. The Letter instructed Mr. Ibrahim regarding the Agency's expectations for professional and respectful

behavior and informed him that the April outburst did not meet these expectations. *Id.* at 3. Two days later, Mr. Ibrahim filed an administrative grievance grieving both the Letter of Counseling and the final 2018 PPA. Mot. Ex. 3 at 39-40. On December 20, 2018, Mr. Ibrahim was notified that he would be assigned to a new detail for at least 90 days, depending on the Agency's needs. Am. Compl. Ex. C-7 at 4, ECF No. 11-14. Mr. Ibrahim's administrative grievance was denied on December 27, 2018; Debra Rogers, Director of PSC, found that the Letter of Counseling was warranted and that Mr. Ibrahim had not timely grieved his final PPA rating. Mot. Ex. 3 at 48-49. On October 2, 2019, Mr. Ibrahim was notified that he would be permanently transitioned to a vacant Supervisory Immigration Officer position in the Center for Fraud Detection Operations, at the G-14 pay level. Am. Compl. Ex. C-7 at 3.

In January of 2020, the Agency opened a second investigation into Mr. Ibrahim's workplace conduct ("Second Management Inquiry"). Mot. Ex. 10, ECF No. 12-12. The Second Management Inquiry was initiated after Mr. Ibrahim's subordinate reported concerns of nonsexual harassment based on gender to the Director of PSC. *Id.* at 2. Mr. Ibrahim characterized this inquiry as stemming from "a frivolous and groundless claim, because a disgruntled employee sent an email to management … to dispute her performance rating." Am. Compl. ¶ 45. The investigation concluded on May 15, 2020. Mot. Ex. 10.

## II.     Procedural Background

Mr. Ibrahim contacted an Equal Employment Opportunity ("EEO") counselor for the first time on October 25, 2019.[3] Mot. Ex. 8 at 2, ECF No. 12-10. Following initial EEO contact and an

---

[3]      Mr. Ibrahim alleges that he initiated contact with the Agency's EEO office via email on October 25, 2019, exactly 45 days after September 10, 2019, the date he claims to have reasonably suspected the discrimination. Am. Compl. ¶ 28. He further alleges that an email delay caused the communication to be delivered one day later, on October 26th. *Id.* For purposes of evaluating the Secretary's motion to dismiss, the Court draws all reasonable inferences in favor of Mr. Ibrahim

intake interview, Mr. Ibrahim filed a formal administrative complaint of employment discrimination with the Agency on December 17, 2019. *See* Mot. Ex. 3. In his complaint, Mr. Ibrahim alleged that his performance ratings, reassignment, and loss of the quarterly award all resulted from discrimination against him based on race, religion, and national origin. *Id.* Specifically, he claimed that on September 10, 2019, he obtained his final 2018 PPA and discovered that it had been falsified with the annotation "employee failed to sign" so that it could be closed out. Mr. Ibrahim interpreted this to demonstrate that the lower performance ratings were not due to innocent errors but were instead purposeful and the result of discrimination. *Id.;* Mot. Ex. 2 at 4, ECF No. 12-4; Am. Compl. ¶ 21.

On June 9, 2020, the Agency's EEO office dismissed the complaint on the grounds that Mr. Ibrahim failed to make initial EEO contact with 45 days of the discriminatory matter or personnel action. Mot. Ex. 2 at 3. The Agency EEO found that the most recent discriminatory event was the issuance of the Letter of Counseling on December 10, 2018, that Mr. Ibrahim did not make EEO contact until over 300 days later, and that he provided no explanation for the delay. *Id.* Mr. Ibrahim appealed the Agency EEO's decision to the Equal Employment Opportunity Commission ("EEOC"), which affirmed the Agency EEO's decision. Mot. Ex. 1 at 3, ECF No. 12-3. Mr. Ibrahim filed a Request for Reconsideration with the EEOC which was denied on March 5, 2021. ECF No. 1-1. On June 1, 2021, Mr. Ibrahim exercised his right to file a civil suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Compl. Mr. Ibrahim subsequently amended his complaint to include allegations about administrative exhaustion and

---

and assumes without deciding that contact was initiated on October 25, 2019. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). This discrepancy, however, does not affect the Court's analysis.

venue, and to include events which occurred between January and June of 2020. Am. Compl. ¶¶ 30, 56.

The Secretary argues in his motion to dismiss, and reiterates in his reply to Mr. Ibrahim's response, that Mr. Ibrahim failed to contact the Agency EEO within 45 days of the pertinent discriminatory events, as required by 29 C.F.R. § 1614.105(a)(1). Mot. 9; Reply 3. The Secretary argues that the 45-day period runs from when the discriminatory act occurred, not when it was discovered, and here the discriminatory events occurred between May and December 2018, yet Mr. Ibrahim waited until October 2019 to contact the Agency EEO. Mot. 10. Furthermore, the Secretary contends, Mr. Ibrahim's claim that the 45-day period was tolled because he did not learn he was being discriminated against until September 2019 is contradicted by the allegations in his own Amended Complaint. *Id.* at 11. As to the new allegations pertaining to discriminatory events in 2020, the Secretary argues that Mr. Ibrahim never amended his EEO complaint to include these allegations nor did he file a second EEO complaint. *Id.* at 12. Mr. Ibrahim therefore failed to administratively exhaust these claims. *Id.* at 12-.13.

In his response in opposition, Mr. Ibrahim argues that the discriminatory events described in his Amended Complaint were part of an ongoing pattern of discrimination, constituting a continuing violation, and he therefore did not have to contact the EEO until the last discriminatory event. Resp. 4. Furthermore, he asserts that the 2018 PPA never became final and that he only learned it had been falsely closed in September 2019. *Id.* at 17-18. Mr. Ibrahim argues that the PPA remained open pending his mandatory appraisal meeting and until he signed the PPA. *Id.* at 6. And, finally, he states that the newly added allegations from 2020 are sufficiently linked to earlier discriminatory events. *Id.* at 7, 15-17.

**STANDARD OF REVIEW**

Motions to dismiss for failure to exhaust administrative remedies are reviewed under Federal Rule of Civil Procedure 12(b)(6). *See Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) ("The failure to timely file an EEOC charge . . . does not deprive the district court of subject matter jurisdiction.") (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)). Rule 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The Court may also take judicial notice of matters of public record under Federal Rule of Evidence 201(b). *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Moreover, where the allegations in the complaint conflict with an attached written exhibit, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). *See also Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011); *Beasley v. Arcapita Inc.*, 436 F. App'x 264, 266 (4th Cir. 2011) ("[W]hen a defendant

7

attaches a document [such as the Agreement] to its motion to dismiss, a court may consider it in determining whether to dismiss the compliant if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity."). However, if the Court considers matters outside the pleadings, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013). Here, the Secretary has attached exhibits to his motion and Mr. Ibrahim has attached exhibits to his Amended Complaint and response in opposition. Neither party has disputed the authenticity of the other's exhibits and all are integral to the Amended Complaint. I can therefore consider these exhibits without converting the motion to dismiss to a motion for summary judgment.

While courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nevertheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F. Supp. 2d 391, 398 (D. Md. 2002). A federal court must liberally construe pleadings filed by self-represented litigants to allow them fully to develop potentially meritorious cases. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, particularly when that party is self-represented. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978).

## DISCUSSION

Prior to filing a Title VII suit, a federal employee must contact an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The failure to do

so "is tantamount to failure to timely exhaust all administrative remedies" and "ordinarily results in dismissal of a complaint of discrimination." *Blount v. Dep't of Health & Human Servs.*, 400 F.Supp.2d 838, 841 (D.Md.2004) (citing *Jakubiak v. Perry*, 101 F.3d 23, 26–27 (4th Cir.1996)). The purpose of the requirement is "to encourage early resolution of discrimination claims on a less contentious and less adversarial basis." *Pueschel v. Veneman,* 185 F.Supp.2d 566, 568 (D.Md.2002). Because I find that Mr. Ibrahim did not exhaust his administrative remedies as to any of the claims in the Amended Complaint, I grant the Secretary's motion to dismiss.

**I.      Events Occurring Between April 2016 and December 2018**[4]

Courts have held that where a plaintiff has alleged a pattern of discrimination creating a continuing violation, the 45-day time period to contact an EEO Counselor begins to run on the date the last discriminatory event occurred. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 118 (2002) ("In order for the charge to be timely, the employee need only file a charge within [the relevant statutory time period] of any act that is part of the hostile work environment."); *Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015) ( Importantly, "the time limitation starts from when the discriminatory act occurred, not when it was discovered."). Additionally, a plaintiff need not have notice of the discriminatory effect to start the 45-day clock – notice of an employer's action is sufficient. *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88–89 (4th Cir.1990) (en banc)

---

[4]      Mr. Ibrahim's administrative complaint filed with the Agency EEO includes incidents of discrimination between April 2016 and December 2018. *See* Mot. Ex. 2. However, Mr. Ibrahim's Amended Complaint begins with the receipt of his 2018 mid-year PPA. Am. Compl. ¶ 7. Mr. Ibrahim only mentions the pre-2018 incidents once in his Amended Complaint, in a chart he created comparing the decisions on his administrative complaint from the Agency EEO and the EEOC. *Id.* at 28. It is therefore unclear whether Mr. Ibrahim means to include these claims in his civil suit. To the extent he did intend to include these pre-2018 claims, these claims also fail for lack of administrative exhaustion because Mr. Ibrahim did not raise any of these claims to the Agency EEO within the required 45 days.

("[I]t is notice of the employer's actions, *not* the notice of discriminatory effect or motivation, that establishes the commencement of the filing period.").

In certain circumstances, however, the 45-day period may be tolled. The regulations applicable to Title VII provide that:

> The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows … that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits ….

29 C.F.R. § 1614.105(a)(2). This Court has interpreted this provision to mean that, when a plaintiff establishes that he reasonably did not know he was the victim of discrimination on the date the discriminatory event occurred, the time for making EEO contact does not begin to run until the plaintiff has a reasonable suspicion that he has been the victim of discrimination. *Upshaw v. Consumer Prod. Safety Comm'n*, No. PWG-12-3130, 2014 WL 1896740, at *5 (D. Md. May 12, 2014) (citing *Coghlan v. Peters,* 555 F.Supp.2d 187, 200 (D.D.C.2008)). This is consistent with the standard applied by the EEOC in its review of Mr. Ibrahim's complaint. *See* Mot. Ex. 1 at 3 ("The Commission has adopted a reasonable suspicion standard to determine when the forty-five (45) day limitation period is triggered.")

Here, Mr. Ibrahim has not established that he made initial EEO contact within the required 45 days. The parties do not dispute that Mr. Ibrahim did not make initial EEO contact within 45 days of learning of the Letter of Counseling, the last allegedly discriminatory event included in his administrative complaint, or within 45 days of any other incident where he claimed he was a victim of discrimination, such as the April 25, 2018 outburst, the receipt of the mid-year PPA in May 2018, or the receipt of the final PPA on November 8, 2018.

Mr. Ibrahim also has failed to establish that the tolling exception applies. Mr. Ibrahim claims that he did not become aware that he was being discriminated against until he received his final 2018 PPA in September 2019 and learned that it had been "falsified for closure." Am. Compl. ¶ 21. Mr. Ibrahim also alleges that it was at this time that he realized the December 2018 Letter of Counseling was discriminatory. The record shows, however, that Mr. Ibrahim suspected he was the victim of discrimination numerous times throughout 2018.[5] First, on April 25, 2018, Mr. Ibrahim claimed he was denied the Employee of the Quarter Award due to discrimination. Mot. Ex. 5 at 1. Then, on May 15, 2018, upon receiving his mid-year PPA, which later became the final 2018 PPA, Mr. Ibrahim "immediately told [his supervisor that the rating] was discrimination and refused to sign it." Mot. Ex. 3 at 22. Additionally, on December 12, 2018, Mr. Ibrahim submitted a rebuttal to the Letter of Counseling, arguing that the First Management Inquiry was conducted with an ulterior motive. He wrote: "The inquiry process itself was not transparent and it may have been used to remove me from my position and separate me from my team." Mot. Ex. 3 at 39-40. It is therefore clear that Mr. Ibrahim had a reasonable suspicion prior to September 2019 that he had been the victim of discrimination.

Mr. Ibrahim's argument that he did not know the PPA was final until September 2019 because he had not signed it and because he had not had an appraisal meeting does not have any merit. The regulations on rating performance do not require an appraisal meeting or that an

---

[5]     For purposes of evaluating a motion to dismiss, the court assumes without deciding that the events described by Mr. Ibrahim, including the PPA ratings and the non-disciplinary letter of counseling, constitute matters and/or personnel actions under 29 C.F.R. § 1614.105(a)(1). The Fourth Circuit has held that "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" traditionally support a Title VII claim, but that other "tangible employment actions" affecting an employee's benefits or responsibilities may create Title VII liability as well. *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999).

employee sign the PPA before the rating can become final. Am. Compl. Ex. C-6 at 1; Resp. Ex. 1 at 61-62, ECF No. 14-2. *See also* 5 C.F.R. § 430.208(a)(3). Employees may try to resolve concerns over their ratings through informal or formal processes, which it appears Mr. Ibrahim attempted to do when he filed an administrative grievance regarding the Letter of Counseling and the 2018 final PPA. Mr. Ibrahim's grievance was denied though because it was untimely. Mot. Ex. 3 at 48-49. Moreover, Mr. Ibrahim's own emails contradict his claim that he did not know his PPA was final until September 2019. Mr. Ibrahim was told numerous times in early 2019 that his 2018 rating was final. *See* Am. Compl. Ex. C-4 at 2 (Feb. 9, 2019 email from Connie Bae to Mr. Ibrahim stating "We are not arbitrating the final rating"); *Id.* at 4 (Jan. 9, 2019 email from Debra Rogers to Mr. Ibrahim stating "Your FY2018 rating was submitted to HR in Burlington along with the rest of the PSC employee evaluations"). Mr. Ibrahim is therefore not entitled to toll the 45-day period.

## II.     Events Occurring After December of 2018

Mr. Ibrahim's EEO administrative complaint alleges incidents of discrimination occurring through December of 2018, Mot. Ex. 3 at 68, but the Amended Complaint includes allegations related to the Second Management Inquiry, which did not begin until early 2020. Am. Compl. ¶ 30. "The factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). If a claimant wishes to bootstrap new claims in his civil suit to his administrative complaint, the claims in the administrative complaint must be properly before the court or the bootstrapped claims will "likewise 'suffer[] the defect of non-exhaustion.'" *Franceschi v. U.S. Dep't of Veterans Affs.*, 514 F.3d 81, 87 (1st Cir. 2008) (quoting *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 479 (5th Cir.1991)); s*ee also Tillbery v. Kent Island Yacht Club, Inc.*, No. CIV.CCB-09-2956, 2010 WL 2292499 (D. Md. June 4, 2010), aff'd, 461 F. App'x 288 (4th Cir. 2012) (holding that new Title

VII retaliation charge had "no charge on which to attach itself" where plaintiff failed to exhaust administrative remedies for EEOC charge). New claims will "typically be barred if the administrative charge alleges one type of discrimination – such as discriminatory failure to promote – and the claim encompasses another type – such as discrimination in pay and benefits." *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 156, 161 (4th Cir. 2018). "[H]owever, if the factual allegations in the administrative charge are reasonably related to the factual allegations in formal litigation, the connection between the charge and the claim is sufficient." *Chacko*, 429 F.3d at 509.

Here, Mr. Ibrahim argues that the new 2020 claims are related to the 2018 claims described in his administrative complaint. He alleges that the First Management Inquiry was used to remove him from his position, deny him awards and other benefits, and disqualify him from promotion opportunities, and the Second Management Inquiry was retaliation. Am. Comp. ¶ 56. Despite Mr. Ibrahim's attempt to link the two inquiries, the exhibits show that the Second Management Inquiry was not actually connected to the First. The Second Management Inquiry was initiated after one of Mr. Ibrahim's subordinates submitted a complaint for "discrimination, harassment, EEO violation, misuse of power of authority, violation of the collective bargaining agreement (CBA), and adverse impact arising from the breach resulting to effecting pay along with a negative performance review for FY2019." Mot. Ex. 11, ECF No. 12-13. The First Management Inquiry was initiated after Mr. Ibrahim's April 25, 2018, outburst over the Employee of the Quarter Award. Mot Ex. 5, ECF No. 12-7.

Thus, the only way these post-2018 claims properly could be before the Court is if Mr. Ibrahim had specifically amended his EEO complaint to include these new allegations or if he had filed a second EEO complaint that included these allegations. An employee may amend his or her

administrative complaint any time before the investigation is complete to include additional, related issues or claims. 29 C.F.R. § 1614.106(d). If a claimant wishes to add additional claims to his EEO Complaint, he must make every effort to inform the agency of his intent to do so. *Gorrasi v. Azar*, No. CCB-20-2389, 2021 WL 4458996, at *7-8 (D. Md. Sept. 29, 2021). Mr. Ibrahim does not allege that he ever amended his administrative complaint to include the events of the Second Management Inquiry. He speculates that the timing of the management inquiries and EEOC investigation was intended to prevent him from amending the complaint, Am. Compl. ¶ 34, but he does not claim that he attempted to amend the claim and was denied the opportunity. Nor does he claim that he ever attempted to file a second administrative complaint. Mr. Ibrahim therefore has not exhausted his administrative remedies as to the events occurring after December 2018, and those claims are dismissed.

## CONCLUSION

For the reasons identified in the foregoing Memorandum Opinion, Mr. Ibrahim's claims are barred for failure to exhaust his administrative remedies. Because Mr. Ibrahim is time-barred from exhausting his administrative remedies, allowing him to amend the complaint would be futile. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618 (4th Cir. 2008) (affirming dismissal with prejudice where amending complaint was clearly futile due to deficiencies in plaintiff's theory of liability); *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007) ("[W]hen exhaustion is no longer possible, dismissal may be with prejudice."). Accordingly, the Secretary's motion to dismiss is GRANTED and the Amended Complaint is dismissed with prejudice.

## ORDER

For the foregoing reasons, it is, this 16th day of November 2022, ORDERED:

1.      Motion to Dismiss, ECF No. 12, is GRANTED

2.      Plaintiff's Amended Complaint, ECF No. 11 is DISMISSED WITH PREJUDICE.

3.      The Clerk is directed to send a copy of this Order and accompanying Memorandum
        Opinion to Plaintiff at the address of record.

4.      The Clerk is directed to CLOSE this case.

Date:   November 16, 2022                              _____/S/_____
                                                       Paul W. Grimm
                                                       United States District Judge